UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**KAYLEE EVELER ET AL.**                                    CIVIL ACTION

**VERSUS**                                                   No. 16-14776

**FORD MOTOR CO.**                                           SECTION I

<u>**ORDER AND REASONS**</u>

Before the Court are two motions in limine filed by Ford. *See* R. Doc. Nos. 68, 70. For the following reasons, the motions are granted in part, deferred in part, denied in part, and dismissed as moot in part.

### I.

Ford moves under Rules 401 and 403 to exclude certain Ford development documents concerning vehicles other that the particular generation of Ford Explorer at issue in this case.

### A.

"Evidence is relevant if (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Relevant evidence is admissible unless otherwise provided by the Constitution, a federal statute, another Federal Rule of Evidence, or another rule prescribed by the Supreme Court. Fed. R. Evid. 402.

Relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

At the outset, the Court rejects Ford's blanket assertion that any documents relating to Ford vehicles other than the one at issue are necessarily irrelevant. "[T]he standard of relevance in an evidentiary context is not a steep or difficult one to satisfy," *Pub. Emps. Retirement Sys. of Miss. v. Amedisys, Inc.*, 769 F.3d 313, 321 (5th Cir. 2014), and many of the documents that Ford seeks to exclude have information regarding the physics of rollovers and rollover testing procedures that are indubitably relevant to evaluating the parties' competing theories of the case.

Thus, the admissibility of the documents largely turns on Rule 403. Rule 403 is meant to be applied "sparingly." *Baker v. Can. Nat./Ill. Cent. R.R.*, 536 F.3d 357, 369 (5th Cir. 2008). Therefore, this Court will not entirely exclude all documents referring to Ford vehicles other than the Ford Explorer at issue. That is particularly true as Ford has the ability to mitigate any jury confusion and/or prejudice through the use of cross-examination that points out the differences between, for example, the 2001 Ford Explorer and the Ford Bronco. Knowing the differences between a Ford Explorer and a Ford Bronco is not exactly rocket science, and the Court fully expects that the jurors—most of whom likely own automobiles—will have no trouble being cognizant of the differences. The Court may also be willing to consider providing an appropriate limiting instruction for such exhibits, should Ford propose one.

The real Rule 403 concern here is whether a particular exhibit would result in "time-consuming mini-trials on [] minimally relevant issues." *In re Paoli R.R. Yard PCB Litig.*, 113 F.3d 444, 454 (3d Cir. 1997). And having reviewed the plaintiffs' proposed exhibits, some of them certainly threaten to bog the Court and the jury down

in time consuming mini-trials, the main purpose of which is to embarrass Ford on issues that have little relevance to the main issues in this case. The Court will exclude some, but not all, of plaintiffs' proposed exhibits.

With those general principles in mind, the Court turns to Ford's objections to specific documents.

**B.**

Ford moves to exclude any reference to two development documents relating to the Ford Bronco. The Court denies Ford's objections to the two Ford Bronco documents.

**1.**

The first document Ford moves to exclude is a 1973 letter from Ford to NHTSA concerning NHTSA's request for comment regarding the development of a rollover performance standard. Pl. Ex. 41. Ford objects that the document is irrelevant and that plaintiffs cannot lay a foundation necessary to support the argument that the statements in the letter were meant to apply to a sport utility vehicle.

The central problem with Ford's arguments is that the document is relevant to proper rollover testing procedures—which is a hotly debated issue between the parties—regardless of whether it speaks to the specific issue of whether the 2001 Ford Explorer was defectively designed. For example, Ford's memorandum argues in favor of human-driven rollover tests. *See, e.g.*, Pl. Ex. 41, at 6-7; Pl. Ex. 41, at 22. That directly contradicts Ford's argument in this case that human-driven tests are not based in science. As such, the Court finds that the document—though certainly

3

old—will help the jury evaluate plaintiffs' expert opinion that human-driven rollover tests can be helpful in determining whether a vehicle has a propensity to rollover. The Court notes that Ford can mitigate any unfair prejudice relating to the age of the document with effective cross-examination, particularly given that the jury should have little trouble understanding that technology has advanced since 1973. Therefore, the Court finds that the probative value of plaintiffs' exhibit 41 is not substantially "outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

**2.**

Ford next moves to exclude a Ford Bronco development document suggesting that Ford should take into account the effect that passengers have on a vehicle's center of gravity when testing for rollover proclivity. Pl. Ex. 49. The exhibit includes a graph suggesting that a vehicle's rollover proclivity increases when there are more passengers in a vehicle. Pl. Ex. 49, at 2. Thus, the exhibit is directly relevant to plaintiffs' theory that the higher a vehicle's center of gravity is—all other things being held equal—the more likely that vehicle is to rollover. That is directly relevant to plaintiff's liability theory, and the Court concludes that Ford can mitigate any unfair prejudice through cross-examination. Therefore, the Court finds that the probative value of plaintiffs' exhibit 49 is not substantially "outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury,

4

undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

## C.

Ford also seeks to exclude documents relating to the first generation Ford Explorer. The Court concludes that some—but not all—of the first generation Ford Explorer documents should be excluded.[1]

## 1.

Ford first seeks to exclude a Ford Explorer development document examining whether the Ford Explorer's track width should be widened and vehicle height lowered so as to improve the vehicle's performance on Consumer Union's rollover tests. Pl. Ex. 44, at 1-3. (Consumer Union publishes *Consumer Reports*.) Ford was evidently considering such changes based upon its own internal testing suggesting that the Explorer would fail the Consumer Union tests.

The document is relevant and probative in at least two ways. First, Ford's proposed actions in response to rollover concerns—widening the track and lowering the body of the vehicle—is exactly consistent with plaintiffs' expert's theory that track

---

[1] Ford indicated in the pre-trial order that it opposed the introduction of plaintiffs' exhibits 77, 78, and 82. However, Ford did not brief its objections to those exhibits in accordance with the pre-trial order. Accordingly, those objections are deemed waived for failure to comply with the scheduling order. *See* R. Doc. No. 65, at 4 ("No objection to any exhibit or any deposition testimony shall be allowed at trial unless the objection was briefed in writing in accordance with this order. Failure to sufficiently brief an objection will result in waiver of that objection."). Nonetheless, the videos—while not particularly prejudicial insofar as the jury will know what a rollover accident looks like—appear to be a waste of the Court's and the jury's time insofar as they simply display a rollover accident of a prior model Ford Explorer.

width and center of gravity are directly related to rollover proclivity. Second, the fact that Ford was performing Consumer Union's rollover tests—tests that this Court previously ruled were admissible under Rule 702, *see* R. Doc. No. 54, at 9-10—and Ford believed that it could predict the likely results, Pl. Ex. 44, at 3, suggests that the Consumer Union test is substantially less random than Ford has argued it to be in this matter. The Court finds that the document will assist the jury in evaluating the battle of the experts and judging whether there were various alternative product designs that would not have rolled over. As always, Ford remains free to use cross-examination and its own evidence to point out that this document concerned a prototype of a previous model of the Ford Explorer, as well as to highlight the various shortcomings of Consumer Union's rollover tests, *see* R. Doc. No. 54, at 10 n.3 ("[T]he Court observes that the methodological flaws of the [Consumer Union short course test] can be easily understood and contextualized by lay-persons."). Accordingly, the probative value of plaintiffs' exhibit 44 is not substantially "outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

### 2.

Ford next seeks to exclude a series of emails between Ford engineers regarding possible revisions to the first generation Ford Explorer to increase its performance on the Consumer Union rollover test. Pl. Ex. 45, at 1-2. One of the proposals included lowering the vehicle, Pl. Ex. 45, at 1, and noted possible longer-term consideration of

6

widening the track, Pl. Ex. 45, at 2. So, as with plaintiffs' exhibit 44, the document is directly relevant to plaintiffs' design defect theory as well as the reliability of the Consumer Union tests. Therefore, the Court will not exclude Plaintiff's Exhibit 44 under Rule 401. Likewise the Court finds that the probative value of Exhibit 44 is not "outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Therefore, the Court will not exclude plaintiffs' exhibit 44 under Rule 403.

### 3.

Ford next seeks to exclude a document that purports to set out various revisions to the first generation Ford Explorer. Pl. Ex. 46. However, the document that the Court received is entirely illegible. As such, the Court has no basis to presently determine whether it would assist the jury and/or would be unduly prejudicial. Therefore, the Court defers consideration of the admissibility of plaintiffs' exhibit 46 until it is presented with a legible copy. No mention or display of plaintiffs' exhibit 46 should be made in front of the jury until after plaintiffs receive permission to do the same at a bench conference.

### 4.

Ford next seeks to exclude a Ford memorandum discussing Ford's plan to lower the chassis of the first generation Ford Explorer as well as to initially limit the diameter of the tires used. Pl. Ex. 47. The Court observes that the exhibit, on its face, does not link those actions to concerns regarding rollover accidents. Therefore,

the Court defers consideration of Ford's objections to the exhibit until plaintiffs can establish that Ford was taking such actions in response to rollover concerns. The Court notes an additional concern that even if plaintiffs could establish such a foundation, the exhibit may well be repetitive with Exhibits 44 and 45 and would waste the jury's time. Nonetheless, the Court postpones consideration of that issue until trial, when it will be better positioned to engage in the Rule 403 calculus. No mention or display of plaintiffs' exhibit 47 should be made in front of the jury until after plaintiffs receive permission to do the same at a bench conference.

**5.**

Ford next seeks to exclude Ford emails discussing whether the Explorer will pass the Consumer Union rollover tests and the effect that tire diameter has on rollovers. Pl. Ex 48. (Indeed, there is helpful information in the exhibit regarding the effect of smaller tires for both sides—the Ford engineers suggest that smaller tires improve rollover test performance, but are detrimental in the real world because the rim is more likely to hit the road and cause a rollover).

Thus, much like plaintiffs' exhibit 44, the document is relevant to multiple issues in the case, particularly as relates to the parties' battle of the experts and plaintiffs' proposed alternative design. Moreover, the Court also notes that Ford can use cross-examination to mitigate any unfair prejudice or clear up any confusion related to the fact that this document concerns a prototype of a previous version of the Explorer. Therefore, the Court determines that the probative value of exhibit 48 is not substantially "outweighed by a danger of one or more of the following: unfair

prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Accordingly, the Court will deny Ford's objections to plaintiffs' exhibit 48.

**6.**

Ford next moves to exclude a thirty-plus page compendium of documents detailing Ford's approval of the first generation Ford Explorer. Pl. Ex. 50. Editorial comments attached to the documents—by whom it is unclear[2]—suggest that plaintiffs intend to use the documents to argue to the jury that Ford relied on factual assumptions that it knew or should have known were untrue when Ford signed off on the rollover performance of the first generation Ford Explorer.

Such an argument, however, is just the sort of prejudicial, tangentially relevant evidence that Rule 403 empowers this Court to exclude. *See In re Paoli R.R. Yard PCB Litig.*, 113 F.3d at 454. The relevant issue here is whether the second generation Ford Explorer had a design defect. Documents relating to the first generation Ford Explorer are really only relevant and probative of that question insofar as they speak to general questions of vehicle physics, designs, and the competing merits of various rollover testing procedures.

Plaintiffs' exhibit 50 does not appear to touch on any of those issues. Instead, it attempts to highlight supposed errors Ford made in data entry and analysis when

---

[2] The Court observes that the comments appear likely to have been added by some non-Ford individual after the creation of the documents. Needless to say, to the extent that they are comments of plaintiffs' counsel or expert, those comments are not evidence and may provide an independent basis to exclude this exhibit.

9

performing rollover testing on the first generation Ford Explorer. That Ford allegedly erred its data entry or ignored certain test results for a separate vehicle over a decade before plaintiffs' vehicle was manufactured—regardless of whether the supposed error was intentional—is not particularly probative of any of the relevant issues here. Moreover, it also veers dangerously close to the impermissible argument that Ford must have acted carelessly when developing the second generation Ford Explorer because of its careless behavior when developing the first generation Ford Explorer. *See, e.g.*, Fed. R. Evid. 404(a)(1). The Court sees little purpose for plaintiffs' exhibit 50 except to make Ford look sloppy, careless, or worse in front of the jury over an issue that has little to do with this case.

Finally, to the extent that there are any relevant points in plaintiffs' exhibit 50 relating to the physics of a rollover accident, general principles of vehicle design, and/or potential alternative designs, plaintiffs do not explain how they are not duplicative of multiple other exhibits submitted by the plaintiffs. Therefore, the exhibit is unduly prejudicial and a waste of the Court's and the jury's time, and the Court finds that the probative value of plaintiffs exhibit 50 is substantially "outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. The Court excludes plaintiffs' exhibit 50 under Rule 403. No mention or display of plaintiffs' exhibit 50 should be made in front of the jury, and plaintiffs should instruct their witnesses accordingly.

### D.

Ford also moves to exclude a compendium of test data concerning Ford rollover tests on the Ford Explorer Sport. Ex. 63. Plaintiffs' sole justification for admission of the documents is that "[t]he same reasoning for inclusion of the above-argued exhibits also applies to Exhibit 63 concerning the U207." R. Doc. No. 76, at n.5. That argument does not provide the Court with sufficient information regarding how plaintiffs' exhibit 63 is relevant to this case, whether it should be admitted, or whether it would be a waste of the jury's time—which is of no small concern when considering a two hundred plus page exhibit. Accordingly, the Court defers consideration of Ford's objections to exhibit 63 until trial. No mention or display of plaintiffs' exhibit 63 should be made in front of the jury until plaintiffs receive permission from the Court following a bench conference, and plaintiffs should instruct their witnesses accordingly.

### II.

Finally, Ford also raises a series of hearsay and Rule 403 objections to a variety of government documents. The Court dismisses as moot in part and defers in part Ford's objections.

### A.

Ford originally moved to exclude testimony from a Ford representative at a congressional hearing. Pl. Ex. 65. Plaintiffs responded to Ford that they only intended to introduce a single paragraph of the exhibit. Ford subsequently informed

11

Court staff that, in light of plaintiffs' concession, Ford would withdraw its objection. Accordingly, the Court dismisses as moot Ford's objection to plaintiffs' exhibit 65.

**B.**

Ford also sought to exclude a NHTSA report discussing the relationship between a vehicle's static stability factor and rollover accidents. Pl. Ex. 66. Ford subsequently informed Court staff that Ford would withdraw its objection. Accordingly, the Court dismisses as moot Ford's objection to plaintiffs' exhibit 66.

**C.**

Ford moves to exclude, on hearsay grounds, a presentation provided by a Toyota employee at a NHTSA hearing. *See* Pl. Ex. 68. The Court agrees with Ford that the testimony is hearsay, but defers the issue as to whether the testimony regarding the presentation would be admissible in some form until trial.

Rule 803(8) excludes from the bar against admission of hearsay,

> A record or statement of a public office if:
> (A) it sets out:
> (i) the office's activities;
> (ii) a matter observed while under a legal duty to report, but not including, in a criminal case, a matter observed by law-enforcement personnel; or
> (iii) in a civil case or against the government in a criminal case, factual findings from a legally authorized investigation; and
> (B) the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness.

Rule 803(8) does not save plaintiffs' proffer of the Toyota presentation. "Mere transcripts of third-party statements do not constitute factual findings and still count as hearsay." *Daniel v. Cook Cnty.*, 833 F.3d 728, 740 (7th Cir. 2016) (internal quotation marks omitted). Therefore, plaintiffs have a double hearsay problem, and

they have not demonstrated that the Toyota presentation falls within any applicable hearsay exception. *See, e.g.*, *Goodman v. Kimbrough*, 718 F.3d 1325, 1333 n.2 (11th Cir. 2013) ("Even accepting that the conclusions drawn in the report itself are admissible under the public records exception to the hearsay rule . . . the statements of third-parties within that report are double hearsay not within any exception to the rule."); *United States v. De Peri*, 778 F.2d 963, 977 (3d Cir. 1985) (observing that "out-of-court statements contained in [public] records require a separate hearsay exception before they can be admitted").

That said, the mere fact that the presentation is hearsay is not necessarily conclusive of the question of whether the plaintiffs will be permitted to inform the jury regarding Toyota's presentation. Rule 703 permits an expert to rely on reliable, yet otherwise inadmissible, facts and data so as to avoid the "expenditure of substantial time in producing and examining various authenticating witnesses." *Factory Mut. Ins. Co. v. Alon USA L.P.*, 705 F.3d 518, 523 (5th Cir. 2013) (internal quotation marks omitted). To do so, plaintiffs must establish that (1) "experts in the particular field would reasonably rely on" the kind of inadmissible "facts or data in forming an opinion on the subject," and (2) the "probative value" of disclosing the otherwise inadmissible information for the purpose of "helping the jury evaluate the opinion substantially outweighs" the otherwise inadmissible information's "prejudicial effect." Fed. R. Evid. 703.

Moreover, the Fifth Circuit has cautioned district courts to ensure that Rule 703 is not being used "as a vehicle for circumventing the rules of evidence." *Factory*

13

*Mut. Ins. Co.*, 705 F.3d at 524 (internal quotation marks omitted).  Thus, for example, a court should ensure that an expert is doing "more than just repeat[ing] information gleaned from external sources," *id.* at 525, so as to prevent evasion of the hearsay rules.

Because the Court will be better placed to evaluate the applicability of the Rule 703 exception at trial, the Court will defer Ford's objection until then.  No mention or display shall be made of the Toyota presentation until the Court permits the same following a bench conference.  Plaintiffs should therefore instruct the relevant witnesses that no mention of the Toyota presentation should be made before the jury until permitted by the Court.

## IV.

Accordingly,

**IT IS ORDERED** that Ford's motions in limine are granted in part, deferred in part, denied in part, and dismissed as moot in part as set forth above.

New Orleans, Louisiana, July 19, 2017.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**

14